# 12-2211-CV

## United States Court of Appeals

*for the*

## Second Circuit

————————— ◆ —————————

TAGC MANAGEMENT, LLC, a Nevada Limited Liability Company,
TAGC I, LLC, a Nevada Limited Liability Company, TOTAL ACCESS
GLOBAL CAPITAL, LLC, a Texas Limited Liability Company,

*Plaintiffs-Appellees*,

v.

EDWARD EUGENE LEHMAN, an individual, KAROLINA LEHMAN, an
individual, SCOTT GARNER, an individual, HOME & GARDEN LIMITED, a
Hong Kong Corporation, LEHMAN, LEE & XU PATENT AND TRADEMARK
AGENTS LIMITED, a Hong Kong Corporation, LEHMAN, LEE & XU
CORPORATE SERVICES LIMITED, a Hong Kong Corporation, LEHMAN,
JONES & PARTNERS (HK) LIMITED, a Hong Kong Corporation, LEHMAN
GS LIMITED, a Hong Kong Corporation, LEHMAN & CO MANAGEMENT,
LTD., a British Virgin Islands Company, DOES 1-10, Inclusive,

*Defendants*,

LEHMAN, LEE & XU LIMITED, a Hong Kong Corporation,

*Defendant-Appellant.*

—————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## ON BEHALF OF DEFENDANT-APPELLANT

ANTHONY SCORDO, III, ESQ.
STUEBEN & SCORDO
1425 Pompton Avenue, Suite 2-2
Cedar Grove, New Jersey 07009
(973) 837-1861

*Attorneys for Defendant-Appellant*

STUEBEN & SCORDO
1425 Pompton Avenue, Suite 2-2
Cedar Grove, New Jersey 07009
 973-837-1861
Attorney for Defendant/Appellant
_____

| | |
|---|---|
| TAGC Management, LLC,<br>a Nevada Limited<br>Liability Company, TAGC I, LLC a Nevada<br>Limited Liability Company, and Total Access<br>Global Capital, LLC a Texas Limited Liability<br>Company,<br>Plaintiffs/Respondents<br><br>vs.<br><br>Lehman Lee & Xu Limited, a Hong Kong Corporation<br>Defendant/ Appellant<br><br>and<br><br>Edward Eugene Lehman, an individual,<br>Karolina Lehman, an individual, Scott Garner,<br>An individual, Lehman, Lee & Xu Limited, a<br>Hong Kong Corporation, Home & Garden<br>Limited, a Hong Kong Corportion, Lehman,<br>Lee & Xu Patent and Trademark Agents<br>Limited, a Hog Kong Corporation, Lehman,<br>Lee & Xu Corporate Services Limited, a Hong<br>Kong Corporation, Lehman, Jones & Partners<br>(HK) Limited, a Hong Kong Corporation,<br>Lehman, CGS Limited, a Hong Kong<br>Corporation, Lehman & Co Management, Ltd.,<br> British Virgin Islands Company and DOES<br>1-10 INCLUSIVE<br>Defendants | UNITED STATES COURT OF<br>APPEALS FOR THE<br>SECOND CIRCUIT<br><br><br><br><br><br><br><br><br><br><br><br>Case No.: 12-2211<br><br><br><br><br><br>**CORPORATE  DISCLOSURE<br>STATEMENT** |

_____

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant/
Appellant, Lehman, Lee & Xu Limited, a Hong Kong corporation by undersigned
counsel, states that no other publicly held entity owns 10% or more of Lehman, Lee &
Xu Limited's stock.

*s/ ANTHONY SCORDO*

Dated:  February 1, 2013

_____

STUEBEN & SCORDO
1425 Pompton Avenue, Suite 2-2
Cedar Grove NJ 07009
973-837-1861

# **TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE...........................................................................2-3

STATEMENT OF THE FACTS ......................................................................3-10

SUMMARY OF ARGUMENT ..........................................................................11

ARGUMENT ...............................................................................................12-23

I.      Plaintiffs failed to plead or allege facts post-default demonstrating defendant/appellant's civil liability under the Racketeer Influenced and Corrupt Organizations Act (RICO) ...............................................12-18

      A.      This court need give no deference to the District Court's decision to hold defendant civilly liable pursuant to the RICO statute..............................................................................................12-13

      B.      Plaintiffs failed to properly plead of demonstrate in their post-default submissions that defendant should be subject to civil liability pursuant to RICO ............................................................14-18

II.     There was no basis for the District Court to Exercise Subject Matter Jurisdiction and the Complaint should properly have been dismissed ...............................................................................................18-23

CONCLUSION ..................................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

<u>Annulli v. Pannikar,</u>
200 F.3d 189 (3d Cir. 1999) ........................................................................15

<u>Arbough v. Y& H Corp.,</u>
546 U.S. 500, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) ................... 18-19

<u>ATSI Comms. v. Shaar Fund,</u>
493 F.3d 87 (2d Cir. 2007) ..........................................................................15

<u>Au Bon Pain Corp. v. Artect, Inc.,</u>
653 F.2d 61 (2d Cir. 1981) ..........................................................................12

<u>Avila v. Pappas,</u>
591 F.3d 552 (7th Cir. 2010) .......................................................................23

<u>Bingham v. Zolt,</u>
823 F. Supp. 1126 (S.D.N.Y. 1993), <u>aff'd,</u>
66 F.3d 553 (2d Cir. 1995) ..........................................................................23

<u>In re Burlington Coat Factory Sec. Litig.,</u>
114 F.3d 1410 (3d Cir. 1997) .......................................................................20

<u>Cedric Kusher Promotions Ltd. v. King,</u>
533 U.S. 158, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001) ...........................17

<u>City of New York v. Mickalis Pawn Shop, LLC,</u>
645 F.3d 114 (2d Cir. 2010) ..................................................................13, 18

<u>Colligan v. Activities Club of NY, Ltd.,</u>
442 F.2d 686 (2d Cir. 1971) ........................................................................21

<u>DiTolla v. Doral Dental IPA of NY,</u>
469 F.3d 271 (2d Cir. 2006) ........................................................................19

<u>Famous Horse Inc. v. 5th Avenue Photo Inc.,</u>
624 F.3d 106 (2d Cir. 2010) ........................................................................21

<u>Finkel v. Romanowicz,</u>
577 F. 2d 79 (2d Cir. 2009), ...................................................................12, 13

First Capital Asset Mgt. v. Satinwood Inc.,
    385 F.3d 159 (2d Cir. 2004) ..........................................................15

Fustok v. Conti Commodity Services, Inc.,
    873 F.3d 38 (2d Cir. 1989) ............................................................13

Gramercy 222 Residents Corp. v. Gramercy Realty Assocs.,
    591 F. Supp. 1408 (SDNY 1984) ..................................................18

Greyhound Exhibitgroup Inc. v. ELUL Realty,
    973 F.2d 155 (2d Cir. 1992) .........................................................12

Hagans v. Levine,
    415 U.S. 528, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974) ................23

Knolls v. Schectman,
    275 Fed. App'x. 50 (2d Cir. 2008) ...............................................15

Lipton v. Nature Co.,
    71 F.3d 464 (2d Cir. 1995) ...........................................................21

Morrison v. National Australia Bank
    ____US____, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2011)......................20

Mills v. Polar Molecular Corp.,
    12 F.3d 1170 (2d Cir. 1993) .........................................................15

Nat'l Basketball Ass'n v. Motorola, Inc.,
    105 F.3d 841 (2d Cir. 1997) .........................................................21

Oak Park Trust & State Bank v. Therkildsen,
    209 F.3d 648 (7th Cir. 2000) ........................................................19

Riverwoods Chappaqua Corp. v. Marine Midland Bank,
    20 F.3d 339 (2d Cir. 1994) ...........................................................17

S.C. Johnson & Son, Inc. v. Clorox Co.,
    214 F.3d 232 (2d Cir. 2001) .........................................................21

Societe Des Hotels Meridien v. LaSalle Hotel Operating P'Ship L.P.,
    380 F.3d 126 (2d Cir. 2004) ...................................................20-21

Spool v. World Child Int'l Adoption Agency,
    520 F.3d 178 (2d Cir. 2008) ...................................................14, 16

Transatlantic Maine Claims Agency, Inc. v. Ace Shipping Corp.,
    109 F.3d 105 (2d Cir. 1997) ........................................................13

United States v. Napoli,
    54 F.3d 63 (2d Cir. 1995) ...........................................................16

United States v. Turkette,
    452 US 576, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981) ................17

**Statutes and Other Authorities**

11 U.S.C. § 1125(a)(1)(B) ..................................................................1, 21

15 U.S.C. § 78a ......................................................................................11

15 U.S.C. § 1051 *et seq.* (Lanham Act) ................................................11

18 U.S.C. § 1341 ....................................................................................15

18 U.S.C. § 1343 ....................................................................................15

18 U.S.C. § 1956 ....................................................................................16

18 U.S.C. §§ 1961-1968 (RICO) ................................................ 1, 11-18

18 U.S.C. § 1961 ......................................................................14, 15, 17

18 U.S.C. § 1962 ..............................................................................14, 18

18 U.S.C. § 1964 ..............................................................................18, 19

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ....................................................................................19

28 U.S.C. § 1367 ....................................................................................23

17 C.F.R. 240.10b-5 .........................................................................11, 20

**Treatises Cited**

Moore's Federal Practice–Civil § 55.32 ...............................................12

## <u>JURISDICTIONAL STATEMENT</u>

The United States District Court for the Southern District of New York (Hons. Richard J. Holwell and Katherine B. Forrest) asserted subject matter jurisdiction over the case below, ostensibly pursuant to Plaintiffs' allegations in the Complaint that Defendants violated the Racketeer Influenced and Corrupt Organizations Act (RICO) 18 U.S.C. §§ 1961-1968, section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78(j)(b) and  Rule 10b-5, 17 CFR 240.10b-5, and the Lanham Act, 15 U.S.C. § 1125 (a)(1)(B).  This is an appeal by Defendant-Appellant Lehman Lee & Xu (hereinafter Defendant-Appellant) from a judgment of the District Court filed March 16, 2012 entering default judgment in favor of Plaintiffs' and from the Order or May 1, 2012 entering monetary judgment against Defendant-Appellant in the total amount of $5,407,576 (that Order was vacated and the amount of judgment reduced by Revised Judgment dated June 25, 2012 to $4,271,726).  Notice of Appeal from the Order of May 1, 2012 was timely filed by Defendant/Appellant on May 30, 2012.  Spa 9-10.

This court has jurisdiction over this appeal under 28 U.S.C. § 1291, as it is an appeal from a final decision of the District Court disposing of all parties claims.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether Plaintiff presented proofs sufficient to establish either causes of action or amount of damages sufficient for court to render Default Judgment.

2. Whether the District Court property entered subject matter jurisdiction over this dispute where Plaintiffs' failed to establish federal question jurisdiction or supplemental jurisdiction.

## STATEMENT OF THE CASE

Plaintiffs in this action purport to be three limited liability companies formed in the States of Nevada and Texas, all of which claim the same address for their principal place of business in Park City Utah. A42. Plaintiffs claim in the Complaint to have "begun communicating" with the named Defendants in February, 2010 (A44), the end result of said communications being monies deposited in escrow with a Chinese law firm, Defendant/Appellant. Despite those allegations, one of the Plaintiffs, TAGC I, LLC, was formed subsequent to February, 2010 (A106). It is also undisputed that TAGC I, LLC owned none of the escrowed monies and all rights claimed by TAGC I, are claimed as a result of purported written Assignment agreements executed subsequent to the transfer of any escrow monies. A311-448.

The body of Plaintiffs' complaint never sets forth the reason monies were sent to Defendant-appellant other than to state that William Dunavant, an individual who is apparently a principal of each and all of the plaintiffs, contacted defendants "regarding a potential new engagement involving a variety of financial transactions."   A46. Despite the allegation in the Complaint, it is undisputed that Dunavant had numerous communications with at least some of these defendants as far back as 2008 involving what can only be generously termed as business proposals where Dunavant claimed to be acting on behalf of a number of business entities.

Defendant at no time denied receiving the funds in question from several escrowees, none of whom is a party to this litigation. Said funds were never earmarked to be held in a law firm Trust Account but instead but instead were to be kept in a newly opened business bank account.  None  of  the  companies  and individuals who sent the escrowed funds are plaintiffs in this litigation, having allegedly assigned their rights. As this is an appeal from the monetary default judgment entered by Judge Forrest, the substance of plaintiffs' claims and issue of requisite standing have not been the subject of any real judicial scrutiny to date.

## STATEMENT OF FACTS

Plaintiffs'/Respondents' Complaint was filed on September 3, 2010 against a number of Defendants, Edward Eugene Lehman, Karolina Lehman, Scott Garner,

Defendant/Appellant Lehman, Lee & Xu, Ltd., a Hong Kong corporation, Home & Garden Ltd., a Hong Kong Corporation, Lehman, Lee & Xu Patent and Trademark Agents, Ltd, a Hong Kong Corporation, Lehman, Jones & Partners, a Hong Kong Corporation, Lehman CGS Limited, a Hong Kong Corporation, Lehman & Co. Management, Ltd, a British Virgin Islands company. The allegations of the Complaint are set forth in detail in this Statement of Facts as this is an appeal from entry of a Default Judgment for monetary damages against defendant-appellant.

The Complaint, in para. 16 alleged that on February 1, 2010 plaintiffs decided to hire certain defendants to "perform a variety of legal and professional services." A44. They claim to have relied upon defendants' representation that individual defendant Edward Eugene Lehman, the managing director of defendant/appellant was a licensed Illinois attorney. A44. They also claim in the same paragraph to have relied upon defendant/ appellant's website as to its client list and its claimed representation of the U.S. Embassy. A45. According to the Complaint in paragraph 17, defendant/appellant's website misrepresents that the law firm has 31 branches and 250 affiliated lawyers when there are just three offices and 15 lawyers. A45. Paragraph 2 of the Complaint alleges that Lehman's Illinois law license had been suspended in 2008 for failure to meet Continuing Legal Educational requirements. A42.

The Complaint in paragraph 18 alleges that one of the defendants, Scott Garner, an attorney working at defendant-appellant, sent a proposal to Dunavant that required a $150,000 deposit to be sent to the firm. A45. Yet the Complaint references as Exhibit "E" an e-mail from Garner stating that it was Dunavant who approached the firm seeking to "offer credit card services and the like" in China through a company he was a principal in called Total Access Payments. A74. Garner's e-mail of February 1 stated that the firm would require a $150,000 retainer to perform the estimated 500 hours of work required for the Dunavant's project. A74.   The Complaint alleges in paragraph 18 that Edward Lehman "created a false sense of urgency by creating a false deadline" to commence the project by paying the retainer. A45. Yet Lehman's e-mail of January 31, 2010 referenced in that paragraph questioned the rationale for the project (he states therein "(W)hat value is added by TAP? Seems this is just what Visa International (a client of our firm) provides. Am I missing something?"  A77. He indicates that "Chinese watch this stuff very closely….Sorry if this seems basic I have to be very remedial with the Chinese to make it crystal clear." A77. Dunavant's response was "Ed I agree with you and so do my partner that we take small steps in the process and not try to eat the elephant." A76.

The Complaint alleges that Garner sought a $2.2 million deposit, referencing an apparently unexecuted Business operations' Agreement between TAP and

defendant/appellant "intended to set forth the basic rights and obligations of the Parties regarding each parties' role in the commercial cooperation to take place in Hong Kong." A45. The transaction was referenced in the e-mails as "China payroll proposal." Ja74. The $2.2 Million was apparently never deposited, not being referenced again in the Complaint, and the payroll scheme apparently never came to fruition though the Complaint provides no explanation why not.

As noted, the gravamen of the actionable allegations in the Complaint center on a subsequent "potential new engagement" occurring after the payroll scheme fell through as alleged in paragraph 21;  however, the details of this new engagement are not contained anywhere in the body of the Complaint. A46. However, according to an e-mail referenced in the complaint, it was Dunavant who approached defendant/appellant seeking "Help-Company Set-Up in Hong Kong" and requesting Edward Lehman's answers to a list of legal questions. A95-100. On May 9, according to an e-mail referenced in the complaint as paragraph 22, Dunavant forwarded by e-mail a proposal where a company called TAGC would be set up with funds from three investors who would deposit $2.8-$2.9 million into Lehman Law Escrow." A100. The designated owners of TAGC would be Dunavant, Radford, Timothy Nemeckay, and Kevin Christian (interestingly, none of these "owners" seem to have invested any of their own money). Lehman would

receive 3.5 % of the deposit to cover its costs. An "instrument" would be funded in the amount of $200 million. A58.

It is undisputed that monies totaling $1,132,850 were wired to defendant/ appellant from five sources the first week of June, 2010.A105. The Complaint alleges in paragraph 23 that Escrow Agreements were entered with "clients of the Plaintiffs and their principals." A46. The Complaint references a document prepared by Garner showing monies had been wired from the following entities, Wind Chasers, Neuromed Devices. Remy Law Offices PC, Nichaolas Kowanko Revocable Trust, and REI Strategies LLC. A105.   The Complaint in paragraph 24 alleges that Edward Lehman confirmed he had set up TAGC and transferred funds in escrow to an account of that company in a Hong Kong bank. A47. However, the e-mail referenced is not from Lehman but from Dunavant and discusses a USA bank account. A106. The same e-mail confirms instructing Lehman to transfer funds totaling $450,000 from an HSBC account to a Chase USA account not $1.1 million. A106.

On July 7, 2010 Lehman wrote Nemeckay copying the others and stating, "best I can see TAGC is a fraud and the request which has been made is tantamount to money laundering as to what has been proposed (ironically Lehman was accused in the Complaint of money laundering)." A107. He indicated he would seek legal advice. On that very day, according to paragraph 26 of the

7

Complaint (A47), plaintiffs engaged current legal counsel who wrote Edward
Lehman and defendant/ appellant claiming to represent <u>six</u> escrowees and
demanding returned of the funds. A109-110. Strangely, counsel's letter does not
correspond in either amount or identity of investors with the verification of receipt
prepared by Garner. A105.

Plaintiffs in their submissions in support of their motion seeking sanctions
attach non-Notarized Assignments and Assumption Agreements all dated July 20,
2010 in which the alleged investors purportedly assigned their rights under the
Escrow Agreements with defendant/appellant to plaintiff TAGC I, LLC.   A311-
448.

The Complaint in this matter was filed on September 3, 2010. On April 14,
2011 the following Defendants' as well as Defendant/Appellant Lehman, Lee &
Xu, Ltd. filed a joint Answer and Jury Demand- Edward Eugene Lehman, Karolina
Lehman, Home & Garden, Lehman & Co., Mgt., Lehman, Jones & Partners,
Lehman, Lee & Xu Corporate Services. A166-177.

On June 30, 2011, all Defendants who filed the Joint Answer with the
exception of Defendant/Appellant moved for dismissal for lack of personal
jurisdiction.  Said motion was granted by opinion of Judge Holwell dated February

1, 2012. On February 14, 2012, the District Court held a transcribed telephone conference with respect to discovery in dispute. A181-196. Pursuant to the Conference, the court entered an Order compelling Defendant to produce documents in the form of bank records and requiring deponents including Edward Eugene Lehman to appear for in-person depositions no later than March 7, 2012. A178-181. On February 28, 2012, Defendant/Appellant moved to quash the notice deposition of Edward Eugene Lehman. A205-240. Judge Forrest denied said motion to quash on February 29, 2012. A241. On March 7, 2012, Plaintiffs' moved for sanctions against Defendant for violation of the Court's Order of February 14, 2012 for failure of Edward Lehman to appear at his deposition and failure to produce the requested bank records. A255-467. Defendant did not oppose said motion. On March 15, 2012, Judge Forrest imposed sanctions striking Defendant's Answer and entering default judgment in favor of Plaintiffs and also imposed monetary sanctions in the form of attorneys' fees. SpA5-6. On March 21, 2012, Plaintiffs filed Proposed Findings of Fact and Conclusions of Law in support of entry of a monetary award of judgment. A471-482. On March 29, 2012, Defendant/Appellant filed opposition to Plaintiffs' Proposed Statements of Fact and Conclusions of Law. A483-488. On May 1, 2012 Judge Forrest entered judgment for Plaintiffs in the amount of $1,135,850.00 for compensatory damages, $3,407,550.00 in treble damages under 18 U.S.C. 1964 (c), $406,339.36 in

attorney's fees and costs, $150,000.00 in punitive damages and $297,997.50 in prejudgment interest for a grand total of  $5,407,576.00.SpA7-8.

On May 11, 2012, Defendant/Appellant moved for reconsideration on the grounds that the District Court had miscalculated the amount of treble damages and had failed to specify the Defendant in the Final Judgment.  Notice of Appeal from the Order and Judgment of Judge Forrest of May 1, 2012 was filed by defendant/appellant on May 30, 2012.SpA9-10.  On June 25, 2012, the Court granted Defendant/appellant's motion for reconsideration in part and revised the amount of the judgment entered by reducing the erroneously quadrupled compensatory damages to treble damages. SpA11-12.

The escrowed monies to date have not been returned to the proper parties by defendant-appellant which at all times disputed any and all of the plaintiffs' ownership interest in the escrowed monies. However, some payments have been made by defendant appellant as a result of an out-of-court settlement between the parties entered into after entry of default judgment but prior to a monetary award. The existence of this settlement is the subject of a pending motion to dismiss appeal filed by plaintiffs.

# SUMMARY OF ARGUMENT

Defendant-appellant appeals the monetary default judgment for the following reasons. The District Court should not have entered default judgment against defendant as plaintiffs failed to plead, or set forth in post-default submissions, a cause of action against defendant/appellant under the civil provisions of the Racketeering Influence and Corrupt Organizations Act (RICO), 18 U.S.C. §1961-1968. Coupled with the failure to prove a civil RICO violation, plaintiffs also failed to properly plead or otherwise demonstrate Lanham Act, (15 U.S.C. § 1051, et. seq.) or Securities Exchange Act of 1934 (under either  Section 10(b) (15 U.S.C. § 78a et. seq.) or Rule 10b-5 (17 C.F. R. 240.10b-5))   violations by the defendant-appellant and the District Court therefore improperly exercised subject matter jurisdiction over the federal question claims and supplemental jurisdiction over the remaining state/common law claims resulting in an award which included both treble damages under RICO and punitive damages under the state law claims.

## ARGUMENT

I.   **Plaintiffs failed to plead or allege facts post-default demonstrating defendant/appellant's civil liability under the Racketeer Influenced and Corrupt Organizations Act, (RICO).**

**A. This court need give no deference to the District Court in reviewing its decision to hold defendant civilly liable pursuant to the RICO statute.**

On a Motion for default judgment, the well pleaded facts in the complaint relating to liability are taken as true.   Greyhound Exhibitgroup Inc. v. ELUL Realty, 973 F. 2d 155 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc. 653 F.2d 61,65 (2d Cir. 1981).  However, a defendant does not admit to facts that are not well-pleaded nor does the Defendant admit conclusions of law.  James Wm. Moore et. al, 10-55 Moore's Federal Practice – Civil § 55.32.  Although a defaulting party admits the factual basis of the claims against it, the defaulting party does not admit the legal sufficiency of those claims.  Ibid. The claimant must state a legally valid claim for relief and the defaulting party may challenge the claimant's pleadings for failure to do so.  Ibid. Thus, prior to entry of default judgment, a district court is required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law. Finkel v. Romanowicz, 577 F. 2d 79 (2d Cir. 2009).

Furthermore, a defaulting party does not admit the allegations in the claim as to the amount of damages and the court must ensure that there is basis for damages

awarded.  <u>Fustok v. Conti Commodity Services, Inc</u>., 873 F.3d 38, 40 (2d Cir. 1989).  The defaulting party is entitled to contest damages.  The court may not merely accept the claimant's statement of damages in the pleadings or affidavits.  Rather the court has a duty to ensure there is a basis for damages in the facts pleaded by the claimant.  <u>Transatlantic Maine Claims Agency Inc. v. Ace Shipping Corp.,</u> 109 F.3d 105, 111 (2d Cir. 1997).

A default judgment is a final action by the district court that may be appealed directly to the Court of Appeals. <u>City of New York v. Mickalis Pawn Shop, LLC,</u> 645 F. 3d 114 (2d Cir. 2010). The *standard of review* on appeal of a default judgment differs depending on what ruling of the district Court is being reviewed. The district court's decision concerning the extent and scope of evidentiary proceedings conducted prior to entry of default judgment should be reviewed for *abuse of discretion*. Ibid.  However the standard for appellate review of a district court's application of law to undisputed facts set forth in plaintiff's pleadings and post-default submissions is *de novo.* <u>Finkel supra,</u> at 81. Therefore, defendant-appellant maintains that this court need give no deference to the District Court's decision in finding liability under RICO unless the facts were either properly pled or presented in post-default submissions by plaintiffs.

**B. Plaintiffs failed to properly plead or demonstrate in their post-default submissions that defendant should be subject to civil liability pursuant to RICO.**

Here, defendant filed responses to plaintiffs' proposed conclusions of law and specifically set forth its position that plaintiffs failed to detail the specific federal crimes constituting predicate acts, failed to set forth a pattern of racketeering activity, failed to plead or otherwise prove the existence of an enterprise, failed to set forth an adequate interstate nexus, failed to allege or prove a conspiracy, and failed to allege injury from investment of racketeering income.

1. *Plaintiffs failed to demonstrate a pattern of racketeering activity.*

A plaintiff in a civil RICO action, under any prong of §1962 (here plaintiffs pled violations of sections 1962 (c) and (d)), must establish a pattern of racketeering activity. Racketeering activity is defined broadly to encompass any of the state and federal predicate offenses listed in section 1961(1). Plaintiffs must set forth a series of related predicates extending over a substantial period of time. Spool v. World Child Int'l Adoption Agency, 520 F. 3d 178, 183 (2d Cir. 2008). This Circuit has generally required a continual scheme with a bright-line rule that it perpetuate for at least two years. Ibid. Conduct that amounts to garden variety state law crimes, torts and contract breaches does not constitute racketeering activity as

14

defined in the statute. <u>See, e.g. Annulli v. Pannikar</u>, 200 F. 3d 189, 192 (3d Cir. 1999).

The Complaint here alleged that defendant committed "hundreds" of predicate acts as listed in section 1961(1) including mail fraud, wire fraud and money laundering. Yet, for the first two predicates alleged, i.e. wire fraud in violation of 18 U.S.C. §1343, and mail fraud in violation of 18 U.S.C. §1341, it is required that plaintiffs satisfy the heightened pleading standards of Fed. R. Civ. Pro 9(b). <u>First Capital Asset Mgt. v. Satinwood Inc.</u>, 385 F. 3d 159, 178 (2d Cir. 2004). Under that standard, plaintiffs must set forth the contents of the communications made over the mail or wires, who was involved, where and when they took place, and provide an explanation why they were fraudulent. <u>Mills v. Polar Molecular Corp.</u>,12 F. 3d 1170, 1176 (2d Cir. 1993). Even where the dates, locations, senders, and recipients of allegedly fraudulent communications are set forth, there must be more than conclusory allegations of why they are fraudulent. Unpublished opinion of <u>Knolls v. Schectman</u>, 275 Fed. Appx. 50 (2d Cir. 2008); <u>ATSI Comms. v. Shaar Fund,</u> 493 F. 3d 87, 99 (2d Cir. 2007).

Plaintiffs here failed to meet the particularity requirements of Rule 9(b), never pleading the time, place or content of the alleged fraudulent communications. Nor did plaintiffs set forth specifically in the Complaint or in their Proposed Statements of Fact and Conclusions of Law what was false or

misleading, other than bare conclusory allegations of fraud. The Complaint at its heart alleges merely theft, i.e. for civil purposes, conversion of escrowed monies and nothing more. The allegations of money laundering (presumably in violation of 18 USC §1956, though at no time in their Complaint is this statute ever cited) also are woefully bare. The crime of theft standing alone is not a specific unlawful activity bootstrapping the existence of laundered proceeds to a federal offense even given the broad range of criminal offenses designated by the federal statute. United States v. Napoli, 54 F. 3d 63 (2d Cir. 1995). While the money laundering statute does proscribe transfer of funds outside the U.S. (cf. Napoli, supra), there is an additional element that such transfer be done for purposes of concealment or to avoid a reporting requirement. Plaintiffs make no such allegation here; in fact, they were the ones who voluntarily transferred monies abroad. Thus, plaintiffs failed to establish defendant's culpability for money laundering as a predicate RICO offense.

In addition to their failure to prove the necessary predicate acts, there was almost no attempt to show a continuing scheme for two years or even two days. See Spool, supra. What was alleged here was nothing more than a one-time event and not a criminal scheme as required. Ibid.

2. *Plaintiffs failed to define what constitutes the alleged criminal enterprise.*

16

Section 1961 (4) defines an enterprise as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact, although not a legal entity. An enterprise must be distinct from the RICO person who commits the predicate acts. Thus, plaintiff must prove the existence of two different entities, a "person" and an "enterprise" that is not simply the same person referred to by a different name. Cedric Kusher Promotions Ltd. v. King, 533 US 158, 161, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001).

Here, plaintiffs never identify the statutory "enterprise" in their pleadings nor do they set forth whether defendant/appellant is alleged to be the enterprise itself or one of the persons associated together for the purpose of engaging in an illegal course of conduct. United States v Turkette, 452 US 576, 583, 101 S. Ct., 2524, 69 L. Ed. 2d 246 (1981). They seem to suggest that the defendant/appellant law firm is both the liable person and the entity whose form is being utilized to engage in illegal conduct. However, a business entity will generally not be liable for operating an association in fact enterprise consisting of itself and its officers or employees. Riverwoods Chappaqua Corp. v. Marine Midland Bank, 20 F. 3d 339 (2d Cir. 1994). Defendant/ appellant maintains that plaintiff's failure to properly plead, or establish in post-default submissions, just why the law firm should be held liable under RICO means the trebled judgment must be vacated.

3. *Other elements of RICO were neither pled nor otherwise alleged.*

In addition to the most obvious defects in their civil RICO claim already set forth, plaintiffs also failed to set forth an adequate interstate nexus to invoke RICO (See, e.g.  Gramercy 222 Residents Corp. v, Gramercy Realty Assocs., 591 F. Supp. 1408 (SDNY 1984)), failed to prove or otherwise allege a conspiracy , 18 U.S.C. § 1962(d) and failed to prove they were injured by investment of racketeering income rather than merely from the underlying crime. 18 U.S.C. §1964(c). To summarize, the Complaint and later submissions are so woefully deficient as to not come anywhere near stating a cause of action under RICO. It is therefore, defendant/appellant's position that, even if compensatory damages were awarded under a state law theory of conversion, it was clear error for Judge Forrest to award treble damages pursuant to 18 U.S.C. §1964(c) in the default judgment monetary award. The end result must be vacation of the trebled award as no cause of action was established under the civil portions of RICO.

II.    **There was no basis for the District Court to Exercise Subject Matter Jurisdiction and the Complaint should properly have been dismissed.**

Federal courts have an independent obligation to inquire into the existence of subject matter jurisdiction. Arbough v. Y&H Corp., 546 US 500, 514, 126 S. Ct.

1235, 163 L. Ed. 2d 1097 (2006). The question of subject matter jurisdiction is valid at any stage of the proceeding and may not be waived.  The question of subject matter jurisdiction is subject to a *de novo standard of review* on appeal, regardless if raised below. DiTolla v. Doral Dental IPA of NY, 469 F. 3d 271, 275 (2d Cir. 2006);  City of New York, supra.

The Jurisdictional Statement of Plaintiffs' Complaint alleges the District Court had jurisdiction over their claims for the following four reasons:

1. Federal question jurisdiction for RICO violations.
2.  Federal question jurisdiction for violations of Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934
3. Federal question jurisdiction for violations of Section 43 (a) of the Lanham Act;
4. Supplemental jurisdiction over state common law claims pursuant to 28 USC § 1367.

Certainly federal courts have subject matter jurisdiction over RICO claims pursuant to 28 U.S.C. §1331 and 18 U.S.C. §1964 (c). However, there are instances where a RICO theory is so deficiently pled that it should not be deemed to arise under federal law at all. See Oak Park Trust & State Bank v. Therkildsen, 209 F. 3d 648 (7th Cir. 2000). Here for the plaintiffs' failure to properly plead or otherwise assert facts properly supporting its RICO claim (as set forth in detail in Point I and not repeated in this Point), rather than enter judgment on the RICO claim and trebling damages, the district court should have dismissed the RICO claim lack of subject matter jurisdiction.

The District Court never indicated whether the facts alleged in plaintiffs Complaint or Proposed Findings of Fact post-default stated a cause of action under either the Lanham Act or the Securities Exchange Act of 1934. Defendant-appellant maintains that, though not addressed by the lower court, it cannot be disputed that no cause of action was demonstrated under either one of these Acts. With respect to the alleged Securities Exchange Act violations, the court simply lacked subject matter jurisdiction as the plaintiffs failed to plead or otherwise allege that the transaction involved securities listed on an American Stock Exchange or that the transaction took place in the United States. Morrison v. National Australia Bank, ____ US ___, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2011). More generally, the Complaint fails to plead with particularity what is being alleged. Just as required to establish the RICO predicate violations, Rule 9(b) requiring specific pleading of claims of fraud also applies in private actions seeking damages for violations of Section 10(b) and Rule 10b-5 In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1417 (3d Cir. 1997) . Defendant/appellant therefore maintains that the pleadings of Securities Exchange Act violations were deficient and fail to confer federal question jurisdiction.

As to the Lanham Act claim for false advertising, plaintiff must allege (1) the advertisement is literally false . . ., or (2) although the advertisement is literally true, it is likely to deceive or confuse consumers.'" Societe Des Hotels Meridien v.

LaSalle Hotel Operating P'ship, L.P.,380 F.3d 126, 132 (2d Cir. 2004) (quoting

Lipton v. Nature Co.,71 F.3d 464, 474 (2d Cir. 1995)). An actionable false

representation must also be material i.e., it must "misrepresent an inherent quality

or characteristic of the product." S.C. Johnson & Son, Inc. v. Clorox Co.,241 F.3d

232, 238 (2d Cir. 2001) (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d

841, 855 (2d Cir. 1997).

Section 43 (a)  of the Lanham Act's language is extremely broad stating that

any person who uses "any false designation of origin, misleading description of

fact, or false and misleading representation of fact" which "….(B) in commercial

advertising or promotion  misrepresents the nature characteristics, qualities or

geographic origin sponsorship or approval of his or her goods, services or

commercial" …  "shall be liable in a civil action by any person who believes that

he or she is or is likely to be damaged by such act." 11 U.S.C. § 1125(a)(1)(B).

Famous Horse Inc. v. 5th Avenue Photo Inc., 624 F. 3d 106, 112 (2d Cir. 2010).

However with respect to standing to sue, Section 43(a) is much more narrowly

interpreted by courts. The Lanham Act's focus is on commercial interests rather

than consumer interests. Id. citing Colligan v. Activities Club of NY, Ltd., 442 F.

2d 686 (2d Cir. 1971) (Judge Jerome Frank, concurring). Thus, this Circuit has

adopted the reasonable interest approach, i.e. a plaintiff must demonstrate a

reasonable interest to be protected against the alleged false advertising and a

reasonable basis for believing that the interest is likely to be damaged by the false advertising. Ibid. Plaintiff's status as a *competitor* of the defendant (rather than a member of the public) alleging a competitive injury is a strong factor in determining whether a plaintiff has standing for a Lanham Act false advertising claim. Ibid.

Here, plaintiffs sought to invoke federal jurisdiction under the Lanham Act as consumers rather than competitors of defendants. They essentially attempted to use the Lanham Act to convert what were basically common law fraud and conversion claims to claims arising under federal law. Defendant-appellant noted in opposing plaintiffs' legal conclusions in its post-default submission that the Lanham Act did not apply because plaintiffs suffered no loss of sales or any other commercial injury. Simply put, Plaintiffs lacked standing to invoke the Lanham Act and the absence of a federal question requires that the Complaint be dismissed for lack of subject matter jurisdiction.  Less important than the standing issue but worth mentioning is that there was no materiality to the false advertising claim. The fact that the Chinese law firm's managing member represented he was an Illinois lawyer when his license had been temporarily suspended for failure to complete CLE requirements is obviously immaterial to the transaction at issue.

Finally, defendant/appellant maintains that, since none of the three purported bases for federal question jurisdiction existed (under RICO, the Securities Exchange Act, or the Lanham Act), the District Court should not have exercised supplemental jurisdiction over the remaining state, and, or common law claims. Though not explicitly articulated in the District Court's decision, the court apparently did exercise supplemental jurisdiction as punitive damages were awarded. Punitive damages are precluded under RICO because the treble damage provisions are themselves punitive in character. Bingham v. Zolt, 823 F. Supp. 1126.1135 (S.D.N.Y. 1993) aff'd 66 F. 3d 553 (2d. Cir. 1995). Thus, the punitive damages were presumably awarded pursuant to state or common law.

However, before supplemental jurisdiction pursuant to 28 U.S.C. § 1367 can be exercised by the District Court, the federal claims as asserted in the plaintiffs' Complaint must be determined to have substance Though plaintiffs need not succeed in their federal claims for the court to exercise supplemental jurisdiction, when the federal theories are so insubstantial as to be rendered frivolous, there is no federal jurisdiction. Hagans v. Levine, 415 US 528, 94 S. Ct. 1372, 39 L.Ed. 2d 577 (1974). See also Avila v. Pappas, 591 F. 3d 552 (7th Cir. 2010). Here the federal claims under all three theories of the Complaint had no substance and the exercise of supplemental jurisdiction was therefore itself also improper and must be reversed.

## **CONCLUSION**

Based on the above mentioned facts and law, this appellate Court should reverse the decision of the District Court, vacate default judgment and dismiss the Complaint for lack of subject matter jurisdiction. At the very least, the Default Judgment must be reduced to a compensatory award vacating trebled damages.

Respectfully submitted,

/s/ Anthony Scordo

Anthony Scordo,

STUEBEN & SCORDO

Attorneys for defendant/ appellant

## **CERTIFICATE PURSUANT TO FED. R . App.P. 32 (a)(7)**

I, hereby certify that I have complied with the type volume limitations imposed by Fed.R.App.P. 32(a)(7).  I hereby certify that I have confirmed through a word count of a word processing system that the total number of words in this brief (excluding the Table of Contents and Table of Authorities) is 5234.

/s/ Anthony Scordo
Anthony Scordo,

STUEBEN & SCORDO

Attorneys for defendant/ appellant

SPECIAL APPENDIX

# TABLE OF CONTENTS

**Page**

Order, Filed March 15, 2012........................................................................ SPA1

Judgment, Filed March 16, 2012 ............................................. SPA5

Order, Filed May 1, 2012........................................................ SPA7

Notice of Appeal, Filed May 30, 2012 ................................... SPA9

Revised Judgment, Filed June 25, 2012 ................................. SPA11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TAGC MANAGEMENT, LLC, et al.,           :
                                        :
                          Plaintiffs,   :       10 Civ. 6563 (KBF)
                                        :
              -v-                       :           ORDER
                                        :
EDWARD EUGENE LEHMAN, et al.,           :
                                        :
                          Defendants.   :
                                        :
----------------------------------------X

KATHERINE B. FORREST, District Judge:

    On February 14, 2012, the Court held a telephonic

conference (the "February 14 conference") in which it resolved a

number of outstanding discovery issues between the parties.

(See Dkt. No. 123 (the "February 14 Order").)  The February 14

Order clearly set forth the terms of discovery with which

defendants must comply, and the sanctions that would be imposed

upon defendants if they failed to comply with those terms.

(Id.)  Even after the February 14 conference and the February 14

Order issued, defendants made two applications for modifications

of the terms of discovery, both of which the Court denied given

the tenor of the February 14 conference.  (See Dkt. Nos. 125,

127, 128, 129, 131.)

    On March 7, 2012--i.e., the date by which defendants were

to have produced Edward Lehman and a 30(b)(6) deponent for

deposition (see Dkt. No. 123 at ¶ 3)[1]--plaintiffs moved for
sanctions, requesting that the Court strike defendants' answer
pursuant to the February 14 Order and Fed. R. Civ. P. 37(b)(3),
and for monetary sanctions of $22,070 for all discovery motions
brought.  (Dkt. Nos. 134, 135.)  In addition, plaintiffs state
that defendants have failed to produce the bank records
compelled by the Court in the February 14 Order.  (See Dkt. No.
123 at ¶ 1.)  Such documents were due on February 21, 2012.
(Id.)  Plaintiffs seek to have defendants and their counsel held
jointly and severally liable for any monetary sanctions imposed.
(Mem. of Law in Support of Pls.' Mot. for Terminating Sanctions
and For Monetary Sanctions (Dkt. No. 135) at 5.)

    Under Local Civil Rule 6.1(a), defendants' opposition to
plaintiffs' motion was due on March 14, 2012.  No opposition was
filed.

    Accordingly, based upon defendants' counsel's
representations at the February 14 conference, the terms clearly
stated in the February 14 Order, and the arguments and evidence
presented by plaintiffs, it is hereby

---

[1] Subsequent to the February 14 conference, the parties had agreed that both
depositions would occur on March 2, 2012 at plaintiffs' offices.  After the
Court denied defendants' motion to quash those depositions, on March 1, 2012,
counsel for defendants informed plaintiffs that neither deponent would appear
for their depositions.  (Decl. of Philip Layfield ("Layfield Decl.") (Dkt.
No. 136) ¶¶ 9, 11.)  Upon being informed of such, plaintiffs offered to
reschedule the depositions to March 5, but defendants did not accept that
offer.  (Id. ¶ 12.)  Plaintiffs then obtained a certificate of non-appearance
based upon defendants' failure to produce the two deponents.  (Id. ¶ 13.)

SPA2

ORDERED that defendants' answer is stricken pursuant to Fed. R. Civ. P. 37(b)(3) and the February 14 Order and thus, default judgment must be entered in favor of plaintiffs.

IT IS FURTHER ORDERED that monetary sanctions should issue for all discovery motion practice defendants required plaintiffs to undertake subsequent to February 14, 2012. Plaintiffs are directed to file an affidavit with supporting documentation showing the hourly rate and the hours spent litigating the discovery motions filed in this action subsequent to February 14, 2012, for Messrs. Layfield, Stein, and Percy (see Layfield Decl. ¶¶ 14-16) no later than **March 21, 2012**.

IT IS FURTHER ORDERED that counsel for defendants, Anthony Scordo, should show cause no later than **March 20, 2012,** by filing a brief of no more than 10 pages, why he should not be held jointly and severally liable for the monetary sanctions that the Court will impose upon defendants in this action.

The Clerk of the Court is directed to close the motion for sanctions (Dkt. No. 134) and terminate this action.

SPA3

The Clerk of Court is further directed to enter judgment in favor of plaintiffs.

SO ORDERED:

Dated:    New York, New York
          March 15, 2012

KATHERINE B. FORREST
United States District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  3/16/12
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
TAGC MANAGEMENT, LLC, et al.,

                              Plaintiffs,

              -against-

EDWARD EUGENE LEHMAN, et al.,
                          Defendants.
-----------------------------------------------------------X

10 **CIVIL** 6563 (KBF)

**JUDGMENT**

Whereas the above-captioned action having come before this Court, and the matter having come before the Honorable Katherine B. Forrest, United States District Judge, and the Court, on March 15, 2012, having rendered its Order striking defendants' answer pursuant to Fed. R. Civ. P. 37(b)(3) and the February 14 Order and thus, entering default judgment in favor of plaintiffs, issuing monetary sanctions for all discovery motion practice defendants required plaintiffs to undertake subsequent to February 14, 2012 and directing Plaintiffs to file an affidavit with supporting documentation showing the hourly rate and the hours spent litigating the discovery motions filed in this action subsequent to February 14, 2012, for Messrs. Layfield, Stein, and Percy no later than March 21, 2012, ordering that counsel for defendants, Anthony Scordo, should show cause no later than March 20, 2012, by filing a brief of no more than 10 pages, why he should not be held jointly and severally liable for the monetary sanctions that the Court will impose upon defendants in this action, and directing the Clerk of the Court is directed to close the motion for sanctions, terminate this action, and enter judgment in favor of plaintiffs, it is,

        **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Order dated March 15, 2012, defendants' answer is stricken pursuant to Fed. R. Civ. P. 37(b)(3) and the February 14 Order and thus, default judgment is entered in favor of plaintiffs;

monetary sanctions should issue for all discovery motion practice defendants required plaintiffs to undertake subsequent to February 14, 2012; Plaintiffs are directed to file an affidavit with supporting documentation showing the hourly rate and the hours spent litigating the discovery motions filed in this action subsequent to February 14, 2012, for Messrs. Layfield, Stein, and Percy no later than March 21, 2012; counsel for defendants, Anthony Scordo, should show cause no later than March 20, 2012, by filing a brief of no more than 10 pages, why he should not be held jointly and severally liable for the monetary sanctions that the Court will impose upon defendants in this action; accordingly, judgment is entered in favor of plaintiffs, and the case is closed.

**Dated:**  New York, New York
March 16, 2012

**RUBY J. KRAJICK**

_____

**Clerk of Court**

BY:

_____

**Deputy Clerk**

THIS DOCUMENT WAS ENTERED
ON THE DOCKET ON _____

SPA6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
TAGC MANAGEMENT, LLC, et al.,        :
                                     :
                       Plaintiffs,   :        10 Civ. 6563 (KBF)
                                     :
           -v-                       :            ORDER
                                     :
EDWARD EUGENE LEHMAN, et al.,        :
                                     :
                       Defendants.   :
                                     :
-------------------------------------X

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED MAY 0 1 2012      │
└─────────────────────────────┘
```

KATHERINE B. FORREST, District Judge:

        Having entered default judgment in favor of plaintiffs on

March 15, 2012 (Dkt. No. 139), which amounts to an acceptance of

the allegations in plaintiff's complaint as uncontested facts,

and having reviewed the submissions of the parties in support of

and opposition to the amount certain to be awarded to plaintiffs

(Dkt. Nos. 143, 145), it is hereby

        ORDERED, ADJUDGED, and DECREED that judgment is entered for

plaintiffs in the amount of:

        $1,135,850 in compensatory damages;

        $3,407,550 in treble damages under 18 U.S.C. § 1964(c) for

plaintiffs' RICO conspiracy claim;

        $406,339.36 in attorneys' fees and costs (broken down as

        $9.839.36 in costs and $396,500 in fees);

        $150,000 in punitive damages; and

SPA7

$297,997.25 in prejudgment interest.


SO ORDERED:

Dated:    New York, New York
          May __, 2012

                        _____
                        KATHERINE B. FORREST
                        United States District Judge

STUEBEN & SCORDO
1425 Pompton Avenue, Suite 2-2
Cedar Grove, New Jersey 07009
 973-837-1861
Attorneys for Defendant Lehman, Lee & Xu Limited (admitted *pro hac vice)*
_____

| | |
|---|---|
| Plaintiffs, | : |
|  TAGC Management, LLC, a Nevada Limited | : UNITED STATES DISTRICT  COURT |
| Liability Company, TAGC I, LLC a Nevada | FOR THE SOUTHERN DISTRICT OF |
| | NEW YORK |
| Limited Liability Company, and Total Access | : |
| Global Capital, LLC a Texas Limited Liability | |
| Company | : |
| | |
| vs. | : |
| | |
| Defendant(s) | : |
| Edward Eugene Lehman, an individual, | |
| Karolina Lehman, an individual, Scott Garner, | : |
| An individual, Lehman, Lee & Xu Limited, a | |
| Hong Kong Corporation, Home & Garden | :        Case No.: 10-CIV-6563 |
| Limited, a Hong Kong Corporation, Lehman, | |
| Lee & Xu Patent and Trademark Agents | : |
| Limited, a Hog Kong Corporation, Lehman, | |
| Lee & Xu Corporate Services Limited, a Hong | : |
| Kong Corporation, Lehman, Jones & Partners | |
| (HK) Limited, a Hong Kong Corporation, | :        NOTICE OF APPEAL |
| Lehman, CGS Limited, a Hong Kong | |
| Corporation, Lehman & Co Management, Ltd., | : |
| British Virgin Islands Company and DOES | |
|        1-10 INCLUSIVE | |

_____


TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

     This document gives notice that defendant Lehman Lee & Xu, Ltd. appeals from the final
judgment entered by the District Court named above on  May 1, 2012.

      Only defendant Lehman. Lee & Xu, Ltd. and no other defendant appeals by this Notice.
This appeal is made to the United States Court of Appeals for the Second Circuit.

Dated: May 30, 2012

ANTHONY SCORDO

*s/ Anthony Scordo*
_____

STUEBEN & SCORDO
1425 Pompton Avenue, Suite 2-2
Cedar Grove, NJ 07009
973-837-1861
Attorneys for defendant Lehman Lee &
Xu, Ltd.

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
TAGC MANAGEMENT, LLC, et al.,       :
                                    :
                       Plaintiffs,  :       10 Civ. 6563 (KBF)
                                    :
            -v-                     :       REVISED JUDGMENT
                                    :
EDWARD EUGENE LEHMAN, et al.,       :
                                    :
                       Defendants.  :
                                    :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED JUN 2 5 2012

KATHERINE B. FORREST, District Judge:

Having entered default judgment in favor of plaintiffs on March 15, 2012 (Dkt. No. 139), which amounts to an acceptance of the allegations in plaintiff's complaint as uncontested facts, and having reviewed the submissions of the parties in support of and opposition to the amount certain to be awarded to plaintiffs (Dkt. Nos. 143, 145), it is hereby

ORDERED, ADJUDGED, and DECREED that judgment is entered for plaintiffs in the amount of:

$3,407,550 in treble damages under 18 U.S.C. § 1964(c) for plaintiffs' RICO conspiracy claim;

$406,339.36 in attorneys' fees and costs (broken down as $9.839.36 in costs and $396,500 in fees);

$150,000 in punitive damages; and

$223,871.37 in prejudgment interest.

SO ORDERED:

Dated:    New York, New York
          June 25, 2012

                                        _____
                                        KATHERINE B. FORREST
                                        United States District Judge

SPA12